UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| UNITED GOVERNMENT SECURITY OFFICERS OF AMERICA INTERNATIONAL UNION and UNITED GOVERNMENT SECURITY OFFICERS OF AMERICA INTERNATIONAL UNION LOCAL 15, | * * * * * * * * | |
| Plaintiffs, | * * | Civil Action No. 19-cv-10373-ADB |
| v. | * * | |
| G4S REGULATED SECURITY SOLUTIONS, A DIVISION OF G4S SECURE SOLUTIONS (USA) INC., | * * * * | |
| Defendant. | * * | |

**MEMORANDUM AND ORDER ON THE PARTIES' CROSS MOTIONS FOR SUMMARY JUDGMENT**

BURROUGHS, D.J.

Plaintiffs United Government Security Officers of America International Union ("Union") and United Government Security Officers of America International Union Local 15 ("Local" and, collectively with Union, "Plaintiffs") initiated this action against Defendant G4S Regulated Security Solutions ("Defendant") to resolve whether the parties' collective bargaining agreement ("CBA") mandates arbitration of a grievance filed by Plaintiffs regarding Defendant's use of forced overtime for maintenance work. [ECF No. 1 ¶¶ 14–15]. Plaintiffs seek declaratory relief, an order compelling arbitration, and damages resulting from Defendant's refusal to proceed to arbitration. [Id. ¶¶ 24–36]. Currently before the Court are the parties' cross motions for summary judgment. [ECF Nos. 28, 31]. For the reasons set forth below, Plaintiffs' motion, [ECF No. 28], is GRANTED in part and Defendant's motion, [ECF No. 31], is DENIED.

**I.      BACKGROUND**

    **A.      Factual Background**

Except as otherwise noted, the following facts are undisputed. The Court refers to the statements of fact submitted by the parties in support of their respective motions, [ECF Nos. 30 ("PSOF"), 33 ("DSOF")], and responses to those statements insofar as they identify factual disputes, [ECF Nos. 35, 37].

Union is a labor organization representing government security services employees, including "guards" as defined under 29 U.S.C. § 159(b)(3), some of whom are represented by Local in Rowe, Massachusetts. [PSOF ¶ 1]. Defendant provides security to nuclear utility plants, including decommissioned sites like the Yankee Atomic Plant in Rowe. [DSOF ¶¶ 5–6, 10]. During the relevant period, Plaintiffs were the exclusive bargaining agent for security guards employed by Defendant at the Yankee Atomic Plant in Rowe. [PSOF ¶ 3]. Plaintiffs and Defendant are parties to the CBA, which runs from January 1, 2018 through December 31, 2020. [Id.]. The CBA contains a grievance provision, Article VII, Section I, which defines a grievance as "a difference of opinion between [Defendant] and an employee or [Plaintiffs] regarding only the meaning or application of [the CBA], but restricted to specific terms of [the CBA] . . . ." [ECF No. 30-2 at 12 (CBA Article VII); PSOF ¶ 4]. The CBA outlines the multi-step grievance process. [ECF No. 30-2 at 12, 10; PSOF ¶ 4]. Steps 1 and 2 involve submitting written notice of the grievance to Defendant's representatives. [ECF No. 30-2 at 12]. If a party is not satisfied after Step 2, Step 3 allows Plaintiffs to "submit the grievance for arbitration by written notice" to Defendant. [Id. at 10; PSOF ¶ 4]. In order to begin the arbitration process, the CBA allows Plaintiffs to request the Federal Mediation and Conciliation Service ("FMCS") to nominate

seven potential arbitrators, and Plaintiffs and Defendant then may each eliminate three potential arbitrators until one remains.  [ECF No. 30-2 at 10; PSOF ¶ 5].

The CBA also contains a provision, Article XII, regarding forced overtime by security guards.  [PSOF ¶ 7; ECF No. 30-2 at 18–19].  Article XII, Section 4 discusses the procedures by which Defendant can staff an overtime shift when no one has volunteered to work the shift.  [PSOF ¶ 7; ECF No. 30-2 at 19].  Plaintiffs' employees perform both security and maintenance tasks for Defendant, and maintenance tasks are included in the job description for security guards.  [DSOF ¶¶ 20, 23; ECF No. 35 at 9, 10].  Maintenance tasks include cleaning floors, snow removal, trash collection, and mowing.  [DSOF ¶ 24; ECF No. 35 at 11].

Defendant identified a need for maintenance work (cleaning floors) to be completed by Plaintiffs' employees on August 4 and 5, 2018, and decided to have employees clean the floors during overtime.  [DSOF ¶¶ 30, 31].  Defendant states that it first attempted to staff the shifts using the CBA's voluntary overtime procedures, [DSOF ¶¶ 32, 33], though Plaintiffs dispute this insofar as they are without knowledge as to whether Defendant did so, [ECF No. 35 at 15].  Defendant then states that it followed the CBA's forced overtime procedures to select two employees to complete the maintenance tasks, [DSOF ¶¶ 34, 35], though Plaintiffs dispute this, again, insofar as they are without knowledge as to whether the procedures were followed.  [ECF No. 35 at 15, 16].  According to Defendant, this was the first time it used forced overtime to have employees perform maintenance tasks, [DSOF ¶ 37], though Plaintiffs also dispute this based on lack of knowledge, [ECF No. 35 at 17].

On August 7, 2018, Plaintiffs filed a grievance at Step 1 on behalf of the two employees who were forced to work overtime to do the maintenance work on August 4 and 5.  [PSOF ¶ 9].  The grievance stated that Defendant violated the CBA by forcing the employees to work

3

overtime for non-security reasons and referenced Article XII, "forced O.T.," call-in procedures, and "past practice." [Id.; ECF No. 30-3 at 2]. Plaintiffs had not previously filed a grievance about maintenance tasks being assigned to its members. [DSOF ¶ 26; ECF No. 35 at 12]. After being dissatisfied with Defendant's response to Steps 1 and 2 of the grievance procedures under the CBA, Plaintiffs filed a demand for arbitration under Article VII of the CBA on September 4, 2018. [PSOF ¶ 10]. Plaintiffs then filed a request with FMCS for an arbitration panel and the parties were given a list of potential arbitrators. [Id. ¶¶ 10–11].

Counsel for Plaintiffs and Defendant then exchanged a series of e-mails in which counsel for Plaintiffs repeatedly asked Defendant to select an arbitrator. [Id. ¶¶ 12, 14, 16, 19; ECF No. 30-7 at 2; ECF No. 30-9 at 2; ECF No. 30-11 at 2; ECF No. 30-14 at 2]. Counsel for Defendant repeatedly told counsel for Plaintiffs that the substance of the grievance was unclear and refused to select an arbitrator. [PSOF ¶¶ 13, 15, 17, 20; ECF No. 30-8 at 2 ("I have no understanding of the manner in which [Plaintiffs] [] contend[] [Defendant] violated the CBA, because I don't see any language that supports the argument."); ECF No. 30-10 at 2 ("I can't select an arbitrator without the most basic understanding of what language [Plaintiffs] allege[] was violated and how."); ECF No. 30-12 at 2; ECF No. 30-15 at 2].

**B.     Procedural Background**

Plaintiffs filed this action on February 28, 2019. [ECF No. 1]. The parties mediated on September 19, 2019 before Magistrate Judge Bowler but were unable to reach a resolution. [ECF No. 27]. After discovery, the parties filed cross motions for summary judgment on February 12, 2020. [ECF Nos. 28, 31]. Both parties opposed, [ECF Nos. 34, 36], and Plaintiffs replied, [ECF No. 38].

## II.     LEGAL STANDARD

Summary judgment is appropriate where the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'" Robinson v. Cook, 863 F. Supp. 2d 49, 60 (D. Mass. 2012) (quoting Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)). "A fact is material if its resolution might affect the outcome of the case under the controlling law." Cochran v. Quest Software, Inc., 328 F.3d 1, 6 (1st Cir. 2003) (citation omitted). Thus, "[a] genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." Id. (citation omitted). By invoking summary judgment, "the moving party in effect declares that the evidence is insufficient to support the nonmoving party's case." United States v. One Parcel of Real Prop. (Great Harbor Neck, New Shoreham, R.I.), 960 F.2d 200, 204 (1st Cir. 1992) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986)).

"To succeed in showing that there is no genuine dispute of material fact," the moving party must "'affirmatively produce evidence that negates an essential element of the non-moving party's claim,' or, using 'evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial.'" Ocasio-Hernández v. Fortuño-Burset, 777 F.3d 1, 4–5 (1st Cir. 2015) (quoting Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000)). Conversely, "[t]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." ATC Realty, LLC v. Town of Kingston, N.H., 303 F.3d 91, 94 (1st Cir. 2002) (internal quotation marks and citation omitted). That is, the nonmoving party must set forth specific, material facts showing that there

is a genuine disagreement as to some material fact.  One Parcel of Real Prop., 960 F.2d at 204 (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256–57 (1986)).

In reviewing the record, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor."  Cochran, 328 F.3d at 6 (citation omitted).  The First Circuit has noted that this review "is favorable to the nonmoving party, but it does not give him a free pass to trial."  Hannon v. Beard, 645 F.3d 45, 48 (1st Cir. 2011).  "The factual conflicts upon which he relies must be both genuine and material[,]" Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012), and the Court may discount "conclusory allegations, improbable inferences, and unsupported speculation."  Cochran, 328 F.3d at 6 (quoting Medina-Muñoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

### III.    DISCUSSION

As a starting point, the Court notes that the parties' opposition briefs do not claim that there is a disputed material fact.  See [ECF Nos. 34, 36].  Although the parties dispute aspects of each other's statements of facts, [ECF Nos. 35, 37], these disputes are not material and therefore do not preclude the entry of summary judgment.  See Anderson, 477 U.S. at 247–48 ("By its very terms, this standard provides that the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." (emphasis omitted)).

#### A.    Whether the Grievance Is Arbitrable

Plaintiffs argue that, given the strong presumption of arbitrability surrounding CBAs with arbitration provisions, Defendant cannot establish that the grievance at issue is not subject to

6

arbitration. [ECF No. 29 at 1–2]. Defendant maintains that the grievance is not subject to arbitration under the CBA. [ECF No. 32 at 10]. The parties do not dispute that the CBA contains an arbitration provision. [ECF No. 29 at 3; ECF No. 32 at 9].

"It is common ground that although a collective bargaining agreement is a contract, it is to be more liberally construed than an agreement between private individuals." Peerless Pressed Metal Corp. v. Int'l Union of Elec., Radio & Mach. Workers, AFL-CIO, 451 F.2d 19, 20 (1st Cir. 1971).

> [W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[an] order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."

AT&T Techs., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 650 (1986) (second alteration in original) (quoting United Steelworkers of Am. v. Warrior & Gulf Navigation Co., 363 U.S. 574, 582–83 (1960)). "[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit," Howsam v. Dean Witter Reynolds, 537 U.S. 79, 83, (2002) (quoting Warrior & Gulf Navigation Co., 363 U.S. at 582), yet "[i]n the absence of any express provision excluding a particular grievance from arbitration, . . . only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail . . . ." Warrior & Gulf Navigation Co., 363 U.S. at 584–85; see Marie v. Allied Home Mortg. Corp., 402 F.3d 1, 11 (1st Cir. 2005) (stating that "[i]n the face of contractual silence, courts should presume that parties intend to give their disputes to the most able decisionmaker on a given issue, both for contractual and public policy reasons," and that arbitrators are in the best position to interpret contracts).

The Supreme Court has identified two questions that are "presumptively for the *court* to decide: (1) 'whether the parties are bound by a given arbitration clause,' and (2) 'whether a concededly binding arbitration clause applied to a particular type of controversy.'" Marie, 402

7

F.3d at 10 (quoting Howsam, 537 U.S. at 84); see Howsam, 537 U.S. at 84 ("[A] gateway dispute about whether the parties are bound by a given arbitration clause raises a 'question of arbitrability' for a court to decide."). Meanwhile, "many other types of claims, including even some 'gateway questions' that might dispose of the entire claim, are presumptively left to the arbitrator. This category includes 'procedural questions which grow out of the dispute and bear on its final disposition.'" Marie, 402 F.3d at 10 (quoting Howsam, 537 U.S. at 84). "This distinction has employed the rough rubric that procedural issues, even if potentially dispositive, are left to the arbitrator; substantive questions about the kind of disputes intended for arbitration are reserved for the court, absent clear and unmistakable evidence to the contrary." Id. Lastly,

> in deciding whether the parties have agreed to submit a particular grievance to arbitration, a court is not to rule on the potential merits of the underlying claims. Whether "arguable" or not, indeed even if it appears to the court to be frivolous, the union's claim that the employer has violated the collective-bargaining agreement is to be decided, not by the court asked to order arbitration, but as the parties have agreed, by the arbitrator.

AT&T Techs., 475 U.S. at 649–50.

Because the parties do not dispute that the CBA contains an arbitration provision, [ECF No. 29 at 3; ECF No. 32 at 9], the only question for the Court to address is "whether [Plaintiffs'] claim is a complaint, dispute or question as to the interpretation, application or performance of the [CBA]," Int'l Bhd. of Elec. Workers, Local 1228 v. WNEV-TV, New Eng. Television Corp., 778 F.2d 46, 48 (1st Cir. 1985). Article VII of the CBA states that a grievance is "a difference of opinion between [Defendant] and an employee or [Plaintiffs] regarding only the meaning or application of [the CBA], but restricted to specific terms of [the CBA] . . . ." [ECF No. 30-2 at 12]. Article XII of the CBA specifically addresses when and how Defendant may assign employees forced overtime shifts. [Id. at 19]. In addition, there is no specific provision within the CBA that excludes forced overtime from arbitrability. See [id.]. The Court therefore finds

8

that Plaintiffs' grievance regarding the use of forced overtime for maintenance work is arbitrable, as the grievance expresses a difference of opinion regarding the meaning and application of a specific term of the CBA, namely forced overtime.

Defendant attempts to frame the issue as one of "maintenance work," arguing that the term "maintenance" does not appear in the CBA and therefore is not arbitrable because it is not a "specific term" within the definition of a grievance. [ECF No. 32 at 12, 13–14; ECF No. 36 at 1–2; ECF No. 30-2 at 12]. Yet Plaintiffs' grievance specifically referenced Article XII and forced overtime. [ECF No. 30-3 at 2]. Although the grievance may concern maintenance work as it relates to forced overtime, the grievance nonetheless concerns the meaning and application of forced overtime—for example, when it may be invoked and whether there may be any limitations on its use.[1]

Defendant also argues that Plaintiffs' reference in the grievance and in their briefs to "past practice" is inappropriate because Defendant did not use forced overtime for maintenance in the past and therefore there was no existing past practice around this issue. [ECF No. 36 at 7]. The Court notes, first, that absence of conduct or action may itself be past practice. See N. Adams Reg'l Hosp. v. Mass. Nurses Ass'n, 889 F. Supp. 507, 514 (D. Mass. 1995) (referencing with approval an arbitrator's reliance on employer never having hired an external candidate to support arbitrator's interpretation of a contract term based on that practice). Second, the existence of a past practice and its bearing on the meaning and application of forced overtime is a question for an arbitrator to resolve. When resolving a grievance, an arbitrator is not limited to

---

[1] Defendant states that a representative for Plaintiffs communicated a belief that maintenance work generally—rather than just within the context of forced overtime—was at the heart of the grievance. [ECF No. 32 at 7]. Yet, by its terms, the grievance was focused on the use of forced overtime in connection with maintenance work, rather than maintenance work in general. See [ECF Nos. 1, 30-3].

9

interpreting the parties' CBA, but may also reference "the industrial common law—the practices of the industry and the shop—[which] is equally a part of the collective bargaining agreement although not expressed in it." Warrior & Gulf Navigation Co., 363 U.S. at 581–82. The Supreme Court has observed that

> [a] collective bargaining agreement is not an ordinary contract for the purchase of goods and services, nor is it governed by the same old common-law concepts which control such private contracts. . . . [I]t is a generalized code to govern a myriad of cases which the draftsmen cannot wholly anticipate. . . . The collective agreement covers the whole employment relationship. It calls into being a new common law— the common law of a particular industry or of a particular plant.

Conrail v. Ry. Labor Execs.' Ass'n, 491 U.S. 299, 311–12 (1989) (quoting Transp. Union v. Union Pac. R.R. Co., 385 U.S. 157, 161 (1966)). Further, "[i]t has been held that a contract may be found to incorporate past practice even though not mentioned." Int'l Bhd. of Elec. Workers, Local 1228, 778 F.2d at 48. Therefore, having found that the issue raised by Plaintiffs is arbitrable, consideration of past practice as it pertains to this issue is left to the arbitrator.

"Once the district court [makes] the threshold finding that plaintiff's claims appear[] to create an issue sufficiently substantial to require submission to an arbitrator, its judicial function [is] at an end." Id. (internal quotation marks omitted). "The courts, therefore, have no business weighing the merits of the grievance . . . or determining whether there is particular language in the written instrument which will support the claim. The agreement is to submit all grievances to arbitration, not merely those which the court will deem meritorious." Id. at 47 (emphasis omitted) (quoting Steelworkers v. Am. Mfg. Co., 363 U.S. 564, 567–68 (1960)). Defendant raises additional arguments regarding whether Plaintiffs' grievance may succeed on the merits— for example, arguing that maintenance work was regularly performed by security guards (though not during forced overtime). See, e.g., [ECF No. 32 at 13–17]. Yet these arguments reach

procedural matters and questions that go to the merits of the grievance which are matters for the arbitrator to decide.[2]

As the Supreme Court has held, parties subject to an arbitration clause under a CBA should submit their dispute to arbitration "unless it may be said with *positive assurance* that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." AT&T Techs., 475 U.S. at 650 (emphasis added) (citation omitted). Because the CBA contains an arbitration provision as well as a provision governing forced overtime, the presumption holds in this matter. Even if the Court were in doubt about the arbitrability of the grievance, "doubts should be resolved in favor of coverage." Id. "In the face of contractual silence," the Court must presume that the parties intended an arbitrator to interpret the CBA and past practice regarding the use of forced overtime for maintenance tasks. Marie, 402 F.3d at 11.

Even "indulging all reasonable inferences" in Defendant's favor, Cochran, 328 F.3d at 6, when "faced with the strong presumption of arbitrability," Mass. Inst. of Tech. v. Research, Dev. Tech. Emps. Union, 980 F. Supp. 2d 8, 16 (D. Mass. 2013), Defendant has failed to produce "forceful evidence of a purpose to exclude the claim from arbitration," Warrior & Gulf Navigation Co., 363 U.S. at 585. Accordingly, Plaintiffs' motion for summary judgment, [ECF No. 28], is GRANTED in part. Thus, Defendant's motion for summary judgment, [ECF No. 31], is DENIED.

---

[2] Defendant also argues that, because it submitted written notice to Plaintiffs in March 2019 that it considered maintenance work during forced overtime fair game, Plaintiffs' August 2018 grievance is now moot. [ECF No. 32 at 16]. Defendant's practices after March 2019, however, are not the subject of Plaintiffs' grievance. See [ECF No. 30-3 (copy of grievance identifying August 2018 incidents as the subject of the grievance)]. An arbitrator may still determine whether, in August 2018, Defendant violated the CBA and/or past practice by using forced overtime for maintenance work.

**B.      Plaintiffs' Requested Relief**

Plaintiffs request that the Court enter a judgment ordering Defendant to proceed to arbitration for the grievance at issue, enter a declaratory judgment that the Defendant is bound by the CBA and has breached the CBA by refusing to arbitrate the grievance, and award Plaintiffs their attorneys' fees and costs.  [ECF No. 1 ¶¶ 30, 32, 35; ECF No. 29 at 20].

1.      Judgment and Declaratory Judgment

Having found that Plaintiffs' grievance is arbitrable, the Court orders Defendant to engage in arbitration with Plaintiffs on the grievance, beginning with the selection of an arbitrator through the process outlined in Section VII of the CBA.

The Declaratory Judgment Act provides that a Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  The express language of the Declaratory Judgment Act and fundamental principles of standing under Article III of the Constitution limit declaratory judgment actions to cases where "the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment."  MedImmune, Inc. v. Genentech, Inc., 549 U.S. 118, 127 (2007) (quoting Md. Cas. Co. v. Pac. Coal & Oil Co., 312 U.S. 270, 273 (1941)).

In the context of collective bargaining agreements, the First Circuit has held that "a 'declaration that . . . breaches did or did not occur certainly would aid the parties in understanding their mutual obligations under the contract.'"  Verizon New Eng., Inc. v. IBEW, 651 F.3d 176, 190 (1st Cir. 2011) (quoting Bituminous Coal Operators' Ass'n, Inc. v. Int'l Union, United Mine Workers of Am., 585 F.2d 586, 595 (3d Cir. 1978)).  "Declaratory relief, of

course, may not be used to supplant the role of the arbitrator in interpreting the provisions of the contract. It may be useful, however, in determining whether the actions at issue have undercut the arbitral process." Id.

As noted above, the Court has found that Plaintiffs' grievance is arbitrable and the parties do not dispute that they are bound by the CBA. [PSOF ¶ 3; DSOF ¶¶ 2, 17]. Given the strong presumption of arbitrability and Defendant's failure to provide "forceful evidence" that the parties intended to exclude forced overtime from arbitration, Warrior & Gulf Navigation Co., 363 U.S. at 584–85, the Court finds that the parties are bound by the CBA and that Defendant breached the CBA by refusing to arbitrate Plaintiffs' grievance.

### 2. Attorneys' Fees & Costs

Plaintiffs request expenses incurred in this litigation as compensation for Defendant's breach. [ECF No. 1 ¶ 35; ECF No. 29 at 18–19]. Defendant argues that Plaintiffs are not entitled to fees because Defendant's conduct did not rise to a level of conduct that would justify such an award. [ECF No. 32 at 18–19; ECF No. 36 at 8–9].

In labor disputes governed by Section 301 of the Labor Management Relations Act, 29 U.S.C. § 185, "litigants generally bear their own costs" unless a court "determines that the losing party has 'acted in bad faith, vexatiously, or for oppressive reasons.'" Local 285, Serv. Emps. Int'l Union v. Nonotuck Res. Assocs., 64 F.3d 735, 737 (1st Cir. 1995) (quoting Alyeska Pipeline Co. v. Wilderness Soc'y, 421 U.S. 240, 258–59 (1974)); see Local 2322, IBEW v. Verizon New Eng., Inc., 464 F.3d 93, 100 (1st Cir. 2006) (stating that "[u]nder federal common law, a court may award fees and costs to the winning party in a section 301 action"). "The term 'vexatious' means that the losing party's actions were 'frivolous, unreasonable, or without foundation, even though not brought in subjective bad faith.'" Local 285, Serv. Emps. Int'l

Union, 64 F.3d at 737 (quoting Wash. Hosp. Ctr. v. Serv. Emps. Int'l Union, 746 F.2d 1503, 1510 (D.C. Cir. 1984)).

First, Defendant argues that Plaintiffs' grievance was unclear and that "Plaintiffs refused to articulate the manner in which Defendant supposedly violated any CBA language." [ECF No. 32 at 18]. Plaintiffs' grievance was clear: it identified the specific provision of the CBA at issue (Article XII), past practice that was alleged to have been contrary to the forced overtime tasks ("forcing officers to work O.T. for reasons unrelated to . . . security"), and the specific breach of the CBA alleged ("[t]he aggrieved were forced to work O.T. for non-security reasons, i.e., maintenance. The Company willfully violated the C.B.A."). [ECF No. 30-3 at 2]. Despite this, in briefing the cross motions for summary judgment, Defendant articulated a reasonable—if unpersuasive—argument in defense of its position that the grievance was not arbitrable. See generally [ECF Nos. 32, 36].

"The line between frivolous arguments and merely unpersuasive ones is fine, and while [Defendant] was ultimately unsuccessful, its contention . . . was 'at least colorable.'" N. New Eng. Tel. Operations LLC v. Local 2327, IBEW, 735 F.3d 15, 25 (1st Cir. 2013) (quoting Local 2322, IBEW, 464 F.3d at 100); see Aggregate Indus.-Ne. Region, Inc. v. Teamsters Local Union No. 42, 762 F. Supp. 2d 285, 299 (D. Mass. 2010) ("I cannot say that [defendant] knew, or should have known, that it had no prospect of prevailing."). The Court finds that Defendant's position was not vexatious but merely unavailing and therefore declines to enter an award of attorneys' fees and costs against Defendant. See Local 2322, IBEW, 464 F.3d at 96 (affirming denial of attorneys' fees where court found losing party's position was unpersuasive but not otherwise vexatious).

14

## IV.     CONCLUSION

Accordingly, Plaintiffs' motion, [ECF No. 28], is <u>GRANTED</u> in part and Defendant's motion, [ECF No. 31], is <u>DENIED</u>.  The Court declares that the parties are bound by the CBA and that Defendant breached the CBA by refusing to arbitrate Plaintiffs' grievance.  The Court orders Defendant to engage in arbitration with Plaintiffs, beginning with the selection of an arbitrator through the process outlined in Section VII of the CBA.  Plaintiffs' request for an award of attorneys' fees and costs is <u>DENIED</u>.

**SO ORDERED.**

September 11, 2020                                                          /s/ Allison D. Burroughs
                                                                                            ALLISON D. BURROUGHS
                                                                                            U.S. DISTRICT JUDGE